## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| APRIL M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 22-1218-JWL |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for SSDI and SSI benefits on September 29, 2020.  (R. 10, 276, 282).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in evaluating her allegations of limitations resulting from her migraines.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

2

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.    Discussion

Plaintiff claims the ALJ failed properly to assess her allegations of disabling limitations related to her migraines.  She argues that despite her significant treatment and consistent reports, and the objective medical findings, the ALJ erroneously discounted her allegations of symptoms.  (Pl. Br. 8).  She argues the ALJ's evaluation of her allegations of symptoms "was flawed because it relied on conclusory statements and inconsistencies that did not exist in the record when specifically considering her migraine-related symptoms."  Id.

Plaintiff acknowledges the court's consideration of a claimant's allegation of symptoms is deferential to the ALJ's evaluation.  Id. at 8-9 (citing Wilson, 602 F.3d at 1144; Hackett, 395 F.3d at 1173; Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990);

Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). She also acknowledges the approach used in the Tenth Circuit to evaluate an ALJ's credibility determination[2] before the SSA issued Social Security Ruling (SSR) 16-3p in 2016 (to clarify "that subjective symptom evaluation is not an examination of an individual's character" but "is an evidence-based analysis of the administrative record to determine whether the nature, intensity, frequency, or severity of an individual's symptoms impact his or her ability to work" SSR 16-3P, 2016 WL 1119029, *1 & n.1) was held to be "consistent with SSR 16-3P, which emphasizes the insufficiency of conclusory statements and recitations of factors and instructs how the 'decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.'" (Pl. Br. 9) (quoting Brownrigg v. Berryhill, 688 F. App'x 542, 546 (10th Cir. 2017) (quoting SSR 16-3P, 2016 WL 1119029, at *9)).

---

[2] Before SSR 16-3P was published, ALJ's frequently used the term "credibility" to describe their findings regarding a claimant's allegations of disabling symptoms. SSR 16-3P eliminated the use of that term and clarified the SSA's policy as quoted above. Although that term is no longer used, the applicable regulations never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Therefore, the three-step framework set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987), based on 20 C.F.R. §§ 404.1529, 416.929 (2017) is still the proper standard to be used as explained in the regulations in effect on January 12, 2022, when this case was decided. Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995); relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

Plaintiff argues, "Though the ALJ provided some reasons that downplayed the impact of [her] migraines, he failed to provide reasons that were supported for discounting the frequency and intensity of her migraines and how her migraine-related impairments impacted her ability to function." Id. at 10.  Plaintiff relies upon this court's decision in Jamie N. v. Saul, Civ. A. No. 20-1164-JWL, 2021 WL 2454427, *5 (D. Kan. June 16, 2021) for the proposition that either the ALJ or the Commissioner must explain "how the limitations alleged by Plaintiff and recognized by the ALJ... are not so functionally limiting as to be disabling."  (Pl. Br. 10) (quoting Jamie N., 2021 WL 2454427 at *5).  She argues remand is required because the ALJ did not explain precisely how the limitations alleged are inconsistent with the evidence or do not impose disabling limitations.  Id. (citing 2021 WL 2454427 at *6).

Plaintiff recognized the ALJ summarized her allegations of symptoms and her "treatment with [her] primary care provider, neurologist, and pain management specialist for her migraines." Id. at 10-11 (citing R. 17-18).  She argues, however,

> the ALJ's analysis only served to highlight the significant evidence that supported [Plaintiff]'s allegations, such as her extensive treatment, observations of bilateral occipital tenderness, and unremarkable brain MRI failed to explain how [her] allegations of migraine-related symptoms were inconsistent with the record.  Additionally, like in Jamie N., the ALJ's discussion doesn't clarify whether [her] allegations related to her migraines were, on their face, disabling.

Id. 11.

Plaintiff argues the ALJ's decision did not cure this alleged error because the ALJ documented treatment including Botox injections, occipital trigger point injections, prescriptions of preventive and acute migraine medications, and pain-focused

6

psychotherapy, but never identified any inconsistencies upon which he relied to discount Plaintiff's allegations of migraine symptoms.  (Pl. Br. 11-12) (citing <u>Stephanie Jean S. v. Kijakazi</u>, Civ. A. 20-1349-JWL, 2022 WL 204244, *4 (D. Kan. Jan. 24, 2022)).  Citing <u>L.T.O. v. Kijakazi</u>, No. 20-1366-SAC, 2021 WL 4709929, at *3 (D. Kan. Oct. 8, 2021), Plaintiff argues the ALJ's reliance upon finding she has slowly improved is not "a specific reason for why the frequency and severity of the claimant's headaches would not disable her." <u>Id.</u> at 12-13.  She acknowledges the ALJ's citation to Dr. Sack's note that "her treatments had 'been effective for treating her pain' and her fibromyalgia was much better," but argues the doctor also noted "her headaches have been 'not good' recently." <u>Id.</u> (quoting treatment note).

Plaintiff argues that as in <u>Andria N. C. v. Saul</u>, Civ. A. No. CV 20-1163-JWL, 2021 WL 2222681, at *5 (D. Kan. June 2, 2021), wherein the ALJ recognized the claimant had migraines "from time to time," and this court determined "the term 'from time to time' is not of so certain a meaning as to preclude accepting Plaintiff's allegation of frequency," the ALJ here recognized Plaintiff had "ongoing issues with migraines" despite her improvement with treatment.  (Pl. Br. 13) (quoting without citation R. 19). Plaintiff argues that the ALJ here also failed to explain how "ongoing issues with migraines" despite improvement was inconsistent with her allegations of symptoms.  <u>Id.</u> Finally, Plaintiff argues her testimony about living alone "indicated she had created an environment to help minimize her migraine-related symptoms," and belies the ALJ's reliance on her activities of daily living to suggest she does not have significant physical or mental limitations.  <u>Id.</u> at 14.

The Commissioner argues substantial evidence supports the ALJ's evaluation of Plaintiff's allegations of symptoms.  She argues the ALJ adequately explained how the evidence of improvement and Plaintiff's activities of daily living are inconsistent with her allegations of disabling headaches.  (Comm'r Br. 8).  She points to the ALJ's finding Plaintiff never sought emergency care for her headaches and reported her treatment provided some improvement.  Id. 9.  She cites treatment notes wherein it was noted occipital trigger point injections treated her headache pain "well" or had "been effective" in treating the pain.  Id. (quoting R. 1440, 1556).

The Commissioner points to Plaintiff's daily activities as cited by the ALJ and contends Plaintiff's contrary argument "in no way undermines the ALJ's factually accurate findings that Plaintiff's symptoms, whatever their cause, did not interfere with Plaintiff's ability to run her own household while living alone."  Id. 10.

**A.**      **The ALJ's Relevant Findings**

At step two of the sequential evaluation process the ALJ determined Plaintiff has a severe combination of physical and mental impairments including "headaches/migraines/ occipital neuralgia."  (R. 12).  He acknowledged at step three of the process that Plaintiff's counsel alleged she meets the requirements of Listing 11.02 but found that her condition does not meet or medically equal the criteria of any Listed impairment and she "has not met [her] burden of presenting medical evidence that supports such a finding." Id. 14.

The ALJ found Plaintiff has the RFC for a range of light work limited to

never work at unprotected heights or with moving mechanical parts; and
can occasionally work in vibration.  The claimant can occasionally tolerate
exposure to dust, odors, fumes and pulmonary irritants beyond a level
found in an indoor work environment such as an office or retail store.  The
claimant must occasionally avoid exposure to bright light, flashing lights,
and loud noises.  The claimant is able to carry out detailed but uninvolved
instructions in the performance of simple, routine and repetitive tasks in a
low stress work environment with no fast-paced production requirements
involving simple work-related decisions, and with only occasional
judgment and work place changes.  The claimant can occasionally respond
to and have interaction with the general public.

(R. 16).

The ALJ stated he had evaluated Plaintiff's allegations of symptoms in accordance

with 20 C.F.R. §§ 404.1529, 416.929 and SSR 16-3p, explained the two-step evaluation

process, and summarized Plaintiff's allegations of symptoms.  Id. at 16-17.  He

acknowledged Plaintiff's alleged symptoms included "frequent headaches/migraines, …

head pain, … sensitivity to light and sound."  Id. 17.  The ALJ found Plaintiff's allegation

regarding the intensity, persistence, and limiting effects of her symptoms "are not entirely

consistent with the medical evidence and other evidence in the record for the reasons

discussed below."  Id.  He found the objective findings (medical signs and/or laboratory

findings, 20 C.F.R. §§404.1513(a)(1), 416.913(a)(1)) "fail to provide strong support for

the claimant's allegations of disabling limitations."  Id.

The ALJ began his evaluation with a discussion of Plaintiff's treatment for

migraines, noting she was first diagnosed with and treated for migraines in 2005.  Id.  He

noted that during the relevant period here Plaintiff had been referred to Dr. Sack for pain

management and he had treated her with bilateral occipital trigger point injections (TPIs).

Id.  He noted that although the TPIs provided only short-term relief lasting only a few

months, "she continued to receive TPIs throughout the relevant period." (R. 18). He

noted Plaintiff "admitted that although she continues to experience migraines, that they

'getting better slowly [sic].'" Id. He also found she received unremarkable MRIs,

lumbar puncture, EMG, and nerve conduction studies and although such results are

consistent with Plaintiff's diagnoses, "nothing in these reports demonstrates disabling

functional limitations." Id.

The ALJ found that although Plaintiff "frequently exhibited bilateral occipital

tenderness and mild diffuse cervical paraspinal tenderness during examinations with Dr.

Sack, … during examinations with Dr. Ford and other providers, the claimant often

exhibited unremarkable findings." Id. He summarized his conclusions:

> Overall, while the claimant may indeed have ongoing issues with migraines
> and body pain, which require ongoing treatment, it appears the claimant has
> slowly improved with this treatment regimen (Exhibit 16F/179 [(R.
> 1556)]). Moreover, she has not required any emergency care for her
> conditions, other than when she allegedly fell downstairs and fractured her
> ankle (as discussed above) (See Exhibits 14F/2, 3, 9, 15 [(R. 1351-52,
> 1358. 1364)]). Additionally, there is no evidence of any significant
> strength, coordination, or gait deficits that support the need for a cane or
> walker to ambulate. Thus, while the claimant may indeed have ongoing
> pain and fatigue, the pattern of clinical findings, and objective data do not
> support her allegation of disabling limitations. Nevertheless, I have
> considered the findings above and ongoing treatment combined with her
> subjective reports and limited the claimant accordingly in the above
> residual functional capacity.

(R. 19).

The ALJ also considered the treatment Plaintiff received for her mental

impairments and noted, "the focus of the claimant's CBT [(cognitive behavioral therapy)]

with Dr. Black was focused on the claimant's migraines and learning to focus on what

she could control versus pain relief, from which, the claimant reported was very helpful

(Exhibit 16F/56 [(R. 1433)]).”  (R. 19).

> The ALJ explained his evaluation of Plaintiff's activities of daily living:
>
> Despite her complaints, the claimant's activities of daily living are not
> suggestive of her having significant physical or mental limitations.  For
> example, the claimant admit [sic] the ability to independently perform
> personal care tasks (Exhibit 6E).  She admit [sic] the ability to cook simple
> meals, and to perform some household chores (Exhibit 6E and hearing
> testimony).  She reported to her mental health provider in August 2021, that
> she was able to host a “speed-dating” event, and that she participated well
> in group therapy (Exhibit 19F/3, 11).  She also reported that could [sic] go
> shopping in stores weekly.  The ability to engage in these activities
> supports a finding of no more than moderate social limitations, and that she
> can complete at least simple, routine, and repetitive tasks.  Overall, the
> claimant's descriptions of her daily activities are not limited to the extent
> one would expect to associate with disabling mental or physical
> impairments.  Her activities are not limited to the extent one would expect,
> given the complaints of disabling symptoms and limitations that preclude
> her from work activities.  Although the claimant may not be able to engage
> in all of the activities that he [sic] did in the past and it may take him [sic]
> longer to perform the task, [sic] she is more active than would be if all her
> allegations were consistent.

(R. 20).  The ALJ discounted Plaintiff's Migraine Disability Assessment Test (MIDAS)[3]

score (R. 779) because “opinions related to the claimant's disability are reserved to

Commissioner and do not require any special persuasiveness analysis.”  Id. at 21.

The ALJ also discussed his evaluation of the persuasiveness of the medical

opinions in the record.  He noted he assessed a need to reduce exposure to lights and

noise because Plaintiff's “repots [sic] of sensitivity to bright lights, loud noises, and

smells secondary to her migraines also supports additional non-exertional environmental

---

[3] The ALJ referred to this score as a migraine disability index.  (R. 21).

limitation." (R. 22). The ALJ found that Plaintiff's reported need for a cane was unpersuasive because it was "it was not prescribed by any treating provider, and was not supported by physical examination findings showing intact gait, coordination, and strength." Id. 23.

## B. Analysis

The court finds no error in the ALJ's evaluation and discounting of Plaintiff's allegations of disabling symptoms. Plaintiff acknowledges the ALJ provided reasons for discounting her allegations of symptoms. (Pl. Br. 10). However, in arguing "he failed to provide reasons that were supported for discounting the frequency and intensity of her migraines and how her migraine-related impairments impacted her ability to function," id., Plaintiff appears to be arguing that the ALJ must provide a specific reason to discount each allegation made. That is not the law. As Plaintiff quoted in her brief, SSR 16-3p requires that the "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." (Pl. Br. 9) (quoting Brownrigg, 688 F. App'x at 546) (quoting SSR 16-3p, 2016 WL 1119029 at *9). What is required is for the ALJ to explain and clearly articulate his specific reasons for discounting Plaintiff's allegations of symptoms and those reasons must be supported by the record evidence. That does not require an ALJ to address each individual symptom, but to address the individual's symptoms generally. This is consistent with the fact that many symptoms cannot be sensed externally and it is impossible for a fact-finder—the adjudicator in a Social

Security disability case—personally to determine the presence, severity, and persistence of each symptom.  But in evaluating the entire record evidence he will see consistencies and inconsistencies upon which he may reach a determination.  Hence the necessity that the ALJ's rationale be supported by the record evidence.

Moreover, although Plaintiff testified that her headache pain is constant and reported to her medical care providers that it varies between 2 and 7 on a scale of ten, the court is unable to find any evidence of a contemporaneous headache diary documenting Plaintiff's headaches and the conditions during which they have occurred.  Thus, the only record evidence of the frequency and intensity of Plaintiff's migraines is her self-serving reports to the agency or to her healthcare providers or examiners.  Inconsistent with Plaintiff's reports of <u>constant</u> migraines with pain level up to seven (although there is no report of the frequency of each level of pain) is other evidence cited by the ALJ:  Plaintiff was first diagnosed with and treated for migraines in 2005 (R. 17) but only alleged disability beginning March 1, 2019.  <u>Id.</u> at 10 (The record shows Plaintiff worked until March 2019.  <u>Id.</u> 321, <u>see also,</u> 301, 303).  Plaintiff admitted her migraines were "getting better slowly."  <u>Id.</u> 18 (quoting Ex. 13F/17).  During examinations with Dr. Sack Plaintiff "frequently exhibited bilateral occipital tenderness and mild diffuse cervical paraspinal tenderness," but "during examinations with Dr. Ford and other providers, the claimant often exhibited unremarkable findings."  <u>Id.</u> (with extensive citations to the record).  Plaintiff appeared to have been slowly improving with treatment of her migraines and she had never required emergency care for her migraines.  <u>Id.</u> at 19.  Plaintiff reported Dr. Black's cognitive behavioral therapy was very helpful in learning to control her migraine

pain. (R. 19). Plaintiff's "activities of daily living are not suggestive of her having significant physical or mental limitations," and she reported "in August 2021, that she was able to host a 'speed-dating' event." Id. at 20 (quoting Ex. 19F/11). As this discussion makes clear, the ALJ clearly articulated his specific reasons for discounting Plaintiff's allegations of symptoms and those reasons are supported by the record evidence. More is not required.

Plaintiff's appeal to this court's earlier cases does not require a different decision. Plaintiff argues that as in Jamie N., 2020 WL 2454427, at *5, neither the Commissioner nor the ALJ in this case explained how Plaintiff's allegations of constant migraines with a pain level of 2 to 7 are not so functionally limiting as to be disabling. However, as the discussion above makes clear, the ALJ here clearly explained why he found Plaintiff's allegations of limitations are not so functionally limiting as to be disabling. The decision makes clear that the ALJ did not accept Plaintiff's allegation that she had constant migraines of disabling severity and why he did not do so.

Plaintiff's reliance upon Andria N. C., 2021 WL 2222681, at *5 is to a similar effect. There, the court found the ALJ acknowledged that the claimant had migraines "from time to time" which could be viewed as accepting Plaintiff's testimony that she had two or three migraines a month which lasted up to two days apiece resulting in the potential for the claimant to miss work two or more days a month because of migraines. Id. The court found that because the ALJ accepted the frequency of the claimant's migraines "from time-to-time," but "neither defined his term nor explained how he determined Plaintiff would not miss two days work a month on a continuing basis,"

14

remand was necessary.  2021 WL 2222681, at *5.  Here, the ALJ did not accept Plaintiff's allegations of the frequency or severity of her migraines and explained why he did not do so.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated July 14, 2023, at Kansas City, Kansas.


s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**